Good morning. My name is Amy Bellantoni. I represent the appellants Mark Baird and Richard Baird. I just want to note one thing is that Judge Smith unfortunately will not participate in oral argument as you probably know because of a family emergency, but he will participate in the discussion and disposition of this case. We have also submitted all of our cases except for one, which is their first and only case, Baird v. Bonta. You can begin and if you want to reserve time for rebuttal, please watch the clock. Yes, Your Honor. Thank you. If I could reserve five minutes for rebuttal. May it please the court. Your Honors, for thousands of years in this country, men have carried weapons for self-defense, whether that be a crossbow, bow and arrow, or a spear, long swords, long guns, and eventually handguns. The carrying of weapons has been a societal norm in this country longer than the government has been around, longer than principalities have been here to place regulations on the carrying of weapons. Twenty-seven states in this country have constitutional carry, over half the states, meaning that there is no license required, no government permission required, in order to exercise the right to self-defense, to carry arms, to carry a weapon that's in common use for self-defense. In the Ninth Circuit, nine of the states, in the nine states in the Ninth Circuit, seven of the states do not require a permit for open carry. Only two states require a permit, one of them being California. But in California, although open carry is technically within the statutes and on the books, no open carry license has been issued since the statute banning open carry went into effect in 2012. So essentially, there's an open carry ban in California, and the open carriage of a handgun in California subjects the violator to criminal penalties. The case below challenges two penal law codes, 25850 and 26350, which render criminal penalties for carrying a handgun, whether loaded or unloaded, and open and exposed. In California, since the time California became a state in 1850, up until 2012, open carry was legal. It was a societal norm. It was virtually unregulated and unremarkable in its history. These modern-day regulations are inconsistent with the plain text and the history and tradition of the Second Amendment. Now, in the court below, we've been trying since 2019 to enjoin these statutes. And this being our third motion for a preliminary injunction, now that the Bruin case had been issued, we're very hopeful in achieving an injunction of these two statutes. But the court below failed to apply the Bruin test. Bruin, as the court is aware, rejected for the third time any public safety arguments, any means and scrutiny balancing tests when it comes to Second Amendment challenges. And in applying the factors for a preliminary injunction, the court below failed to consider the merits and the likelihood of success on the merits, failed to consider irreparable harm, and went straight to the balancing of the equities. But rather than balance what harms would come to the government versus the plaintiffs, she used the balancing test that the Supreme Court has rejected time and time again, and more specifically, and recently, last year in Bruin. And that was error, and her decision should be reversed. I mean, the error here that you're arguing is that the court didn't properly apply the winter preliminary injunction test, right? By ignoring the first factor? Well, yes, Your Honor. She did ignore the first and the second factors. And the first factor, as the circuit has held, is the most important factor. Yes, so that is, it was an error for her not to apply the winter test. The reason for that is that the court below, because the court improperly applied the balancing, that balancing in the way that the court was applying it was improper. And balancing should not have been, the balancing prong should not have been approached in the way that the lower court approached it. And that was to use public policy balancing and intermediate scrutiny and means and balancing that the Supreme Court has rejected time and again for Second Amendment challenges. And if she had applied the first prong properly and at all, she would have been forced then to see that there was a substantial likelihood of success on the merits. And substantial irreparable harm for the Second Amendment violations that took place. And properly applying the third prong, whenever there are constitutional violations, as the circuit has held, there is no harm to the government in making sure. Again, as you pointed out, it is odd that this court didn't address the first factor. And because of that, perhaps that first issue isn't briefed sufficiently before us. What is the remedy that you're seeking here? Do you want us to reverse and remand? Do you want us to enter injunction? What exactly is it that you're seeking? Your Honor, I believe that it would be appropriate for this court to permanently enjoin the two criminal statutes. Because looking at the likelihood of success on the merits, the Bruin case has already held that public carry falls squarely within the plain text of the Second Amendment. If I can stop you there, are you saying to issue a preliminary, direct the district court to enter a preliminary injunction? Or you're saying that it should be permanently enjoined? I don't know if at that stage we can do that. As the court is aware, the court does have the authority to enter a permanent injunction. But alternatively, yes, to remand and order the lower court to enter a preliminary injunction of the two criminal statutes. I say permanent injunction, Your Honor, because the issues here are very straightforward. And bringing the case back to the district court would essentially... I have no confidence that we're going to return to the district court and have success there. Because it's been a challenge to have the district court apply Supreme Court precedent, particularly text history and tradition. Why would... I mean, as far as the permanent injunction goes, the state, it seems, should have an opportunity to comply with Bruin, what Bruin says, and try to provide the historical evidence to support an open carry ban at the preliminary injunction stage. It hasn't had a... I mean, at the permanent injunction stage, it hasn't had a chance to do that as far as the permanent injunction goes. No, they've not had that opportunity, Your Honor, but there is no historical evidence that they could present. Well, I know, of course, you're going to say that, but why wouldn't a state get an opportunity to do that? Okay. Agreed. Okay. I assume the government will say that the issue, the first issue, hasn't been properly, the merits of it, the likelihood of success, hasn't been properly briefed before us. Why shouldn't we remand that back to the district court to reassess the winter factors to see if a preliminary injunction should be issued? The only issue left for determination would be the state to provide some type of historical analog for the founding era that would justify the regulation. And they would have to show that a ban criminalizing open carry in 1791 existed, which would nullify the Second Amendment and the plain text of the amendment in the first instance. There is no possibility that any historical analog could be found, pegged to 1791, that justifies a ban on open carry. Well, you say that. I think Judge Lee was asking, why shouldn't the state be given an opportunity to provide that? They may disagree that the historical evidence, I guess, we'll hear, but they may disagree whether that historical evidence might be available. So why shouldn't they be given an opportunity to do that? In other words, we would remand to the district court, say, you need to address the first prong. You can't just skip over it. But should or should not the state be given an opportunity to provide historical evidence on that first prong? I understand, and don't answer because there is none. Because why shouldn't the state be given an opportunity to do that? Bruin has put this issue to rest, respectfully, Your Honor. Bruin was a public carry case, and Bruin recognized and held that public carry, they had little difficulty. So now I'm starting to get a little frustrated because the state's argument, I mean, I read the state's brief to the district court. Do you remember what the state's brief to the district court was? You don't have much time, so the state's brief to the district court was, Bruin addressed this issue directly, and, you know, you should not grant the preliminary injunction because we obviously went on the merits based on Bruin. And now you're saying the same thing on your side, and neither of you are correct. What Bruin said is you look at the historical evidence, right? You would agree with that? Yes. Okay, and so then the court should look at the historical evidence. So why shouldn't the state have an opportunity to provide that historical evidence? I think you would agree that the court doesn't just have to take your word for it that it doesn't exist, right? Yes, Your Honor. I wasn't saying that they did. I was merely trying to analogize Bruin, which when the court looked to the proper cause restriction and found that to be unconstitutional, by analogy, a complete ban would have to be, as a matter of law, found unconstitutional. But certainly, if the state needs the opportunity… The state's argument is that they are essentially a shall-issue, conceal-carry jurisdiction now. Now, I don't know whether any of that's true. That's their argument. And so their argument is that if they allow you to carry concealed, they don't have to allow you to carry open. And it seems to me they would, under Bruin, they would have to show historical evidence to support that. They haven't provided that as far as I can tell, but the question is why shouldn't they be given an opportunity to do that on remand for the preliminary injunction? Sure, Your Honor. Then they absolutely should be given the opportunity to find some historical evidence in that. I'm surprised to hear that's your answer because I thought your answer would be they already had an opportunity, they blew it, and so give us the P.I. Well, I'm trying to… I apologize if I'm not coming across clearly, Your Honor. I mean, we did have the opportunity at the preliminary injunction stage, and the court didn't hold them to their burden. So in that respect, it was error for her not to have… they had a burden. That was their burden and that was their opportunity, and they didn't. And the court should have recognized that below and did not. Do you want to reserve… Yes, I'd like to reserve the last three minutes, please. Thank you. Great. Thank you. Good morning. This is Mike Moore for the Attorney General. May it please the Court. The District Court did not abuse its discretion by denying plaintiff's preliminary injunction request under the highly unusual circumstances presented in this case. As the District Court recognized, because plaintiffs took the position that Bruin partially overruled Winter, plaintiffs did not even attempt to carry their burden with respect to Winter's equitable considerations. Those factors favored the State. So I… your argument was… and plaintiffs seem a little confused on appeal, but I think they… it's clear enough that they're at least making both arguments. One is that somehow Bruin did something to Winter, which is obviously wrong. But they also are arguing that they shouldn't address the… that the District Court erred by just jumping over the first prong of Winter in a constitutional case, because those constitutional… because if it's a constitutional claim, that affects the later prongs. So if you could address that for us, that, you know… because I don't… their argument that somehow it changed Winter is silly. And certainly we think in a typical case, District Court should be addressing likelihood of success on the merits. We think that given the unusual circumstances here, or plaintiffs didn't even try to make a showing as to Winter's… Wait a minute, but it's not their… it's not… well, I read their briefing. It's not their burden. It's very clear that Bruin puts the burden on the State. That's the whole point, was to kind of flip the presumption and make sure that if it's… well, first of all, would you agree that open carrying a gun is a type of thing that, you know, under the first step of Bruin, that would… it falls with that? Yes, Your Honor, in our brief, we assume without deciding. And I think you also agree, or at least the State has, that at the merit stage, you would definitely bear the burden to show a historical analog. Yes, Your Honor, we disputed that below, but we did not contest the… I didn't think you disputed below that at the merit stage, you would bear the burden. Yes, Your Honor, we did not dispute at the merit stage. Yeah, you agree that… you don't dispute that the merit stage, you would bear the burden to show a historical analog. Correct, Your Honor, we don't dispute that. So your only dispute would be that… And we don't have this any longer, but we had raised an argument that even at the preliminary injunction stage, the plaintiff would bear the burden of coming forward. But you don't… but you're not arguing anymore. No, Your Honor. Okay, so why would you be… but you just said they didn't provide any evidence, but it's not their job to provide any. Their job would be to provide… to show that this is kind of Second Amendment activity that's covered, and then it would be the State's job to provide. Your Honor, I was trying to discuss Winter's third factor. The plaintiff still has to show that the balance of the equitable considerations tips in their favor, and I don't think that that was something that was modified. I see. So the challenge… it is true that you have to win… the plaintiffs have to win on every winner's factor. But constitutional cases are kind of an odd thing under the winner's factor because on a constitutional case, you know, if I show that you're going to violate my constitutional rights, the government never has a… that's irreparable harm. Would you agree that that's irreparable to have your constitutional rights… well, turn it around. I'm violating your constitutional rights instead of making you the bad person. And you would agree that that's irreparable harm? Your Honor, I think it has been the practice of this circuit to still ask in constitutional cases whether or not plaintiffs have come forward with an allegation of harm and hasn't treated those two factors as synonymous. And for example, I know we cited the Dish Network case in our brief at page 23. That was a First Amendment case where a plaintiff came forward and showed… was arguing that because they established likelihood of success, there was no need to consider irreparable harm. And there the panel still treated that as a separate factor. But I would say that even, you know, I think the district court's analysis could have been, you know, more ideal, but I do think that the court acknowledged what the plaintiff's arguments were as to harm and all but credited them. It just found them insufficient to outweigh… It would work, though, because if let's talk about a First Amendment case. Let's say there's some speech and would it really be appropriate for a district court at the third, fourth prong, the public interest prong, the one the district court addressed here to say, I'm going to skip over whether or not, you know, this speech ban is actually constitutional, you know, whether they're prevailing the merits. I'm going to skip over the irreparable harm. I'm just going to say, you know, we really need to ban this speech because if people say this stuff, you know, people may take it up and do bad things with it. But if it's actually constitutionally protected speech, that's, I mean, that's something we allow. We don't allow the fact that people might listen to wrong speech and do bad things, you know, riot in the streets or something like that, you know, whatever it is. We still allow Karl Marx books to be, even though bad things have happened. So the analysis is a little odd, I feel like. Your Honor, I certainly agree that it would be inappropriate in that case to skip over all the factors. I just, I'm not sure that that's what the district court did here. And particularly at ER 11, the district court acknowledged that in the absence, that plaintiffs were making the argument that in the absence of an injunction, they would be unable to carry firearms for lawful self-defense. But as the district court recognized, plaintiffs concede that they both have the ability to concealed carry firearms. And so it found that harm just insufficient to outweigh what the state was putting forward on public safety. Yeah, but, you know, I've never seen an opinion in which the district court in a preliminary injunction, especially for a constitutional law claim, ignores the first factor, the likelihood of success. I mean, that is by far the most important factor in constitutional claims, usually probably the dispositive factor. I mean, that is, you know, very, very odd. I mean, that's like talking about the Patriots' dynasty and never mentioning Tom Brady and talking about the punter instead. I mean, it is, it's just odd to do that. And not only that, that first factor kind of bleeds into all the other factors, especially on a constitutional law claim. So it just, you know, that's why I was very puzzled about the district court's decision here. Your Honor, I think that the district court did try in its balance of the equities analysis to credit what plaintiffs were claiming to be their harm. It's just that the plaintiffs had not put anything forward to rebut the state's presentation on public safety. But I certainly, we do think that this was an unusual way to handle a preliminary injunction motion. And we certainly think that in a typical case, district court should be addressing likelihood of success. We have briefed the merits issue before this Court, too. And it's our position that it wouldn't have made a difference in this circumstance because we think that there's enough in Bruin to establish that plaintiffs don't have the type of entitlement to unlicensed open carry that they're seeking here. Can I ask a question about that? So I think it was Peruta in our en banc case. The majority opinion, I think it was Peruta, said, it wasn't Young. So I think it said, it specifically said we're not going to, in that case they were challenging a concealed carry. And they were saying, yeah, but we don't have the ability to open carry. So these cases that, we don't have the ability to carry at all. And our court said, no, no, you just look at one or the other. Like you just, our court said, you don't consider concealed carry and how that's affected by the ability or not to open carry. But that seems to be exactly, so that was the position of the court. Now I would assume Peruta's kind of been over, you know, sort of been overturned by Bruin. But that part of Peruta, it seems like the state won on that argument in Peruta to say we're not going to look at, we're going to look at concealed carry as a totally separate thing from open carry. But here, it seems like your argument is you need to, you really need to take in the fact that you can conceal carry in looking at our open carry ban. So it seems like that's the opposite of the argument the state prevailed on in Peruta. Does that affect anything in this case? No. I think that Peruta is consistent with Bruin, which is the case that I would characterize as providing the most on-point guidance for now. And in Bruin, the court said that the Second Amendment protects the right to public carry, but that's consistent with state regulation of the manner of carry. And the court didn't go so far as to say that because there was this history of banning concealed carry, that that meant that there was an entitlement to open carry. I think that's entirely consistent with Peruta's holding that concealed carry isn't necessarily required by the Constitution. But I don't think that any of these questions are exactly clearly presented in this case because plaintiffs are seeking a right to unlicensed open carry in particular rather than open carry in general. And so we're relying on Bruin in our briefing just for the proposition that state licensing schemes seem to be clearly endorsed in Bruin. Yeah, so your reliance on Bruin is real, seems to be a really high level of generality. You're basically saying Bruin governs our case because it is, because it says that there can be regulations. These are, you know, it says you have a right to carry, but there can be regulations. These are regulations on the right to carry. Therefore, Bruin, we prevail under Bruin. But isn't it true that Bruin asks for a little bit more of a granular, requires a little bit more of a granular look at the historical? And so why wouldn't Bruin require in this case that the state show that there's actually historical analogs for banning open carry? Your Honor, I would just want to make clear, we relied on Bruin for the specific posture of this preliminary injunction motion. It's our position that since plaintiffs have the burden of establishing a likelihood of success in the merits, Bruin at least gives enough to tell us that that factor favors the state. But we don't think that in the district court we can get to dispositive motions if the story ends at Bruin. We have been developing the historical evidence as to restrictions on open carry. We are near the close of expert discovery and we plan to make a historical case at summary judgment. So let me ask you this. So if we were to conclude that the district court, you know, you can't, you know, in this case or other cases, when you have a constitutional claim and you're asking for a P.I., you can't just jump over the merits inquiry and to the last factor because they all kind of do relate to each other in a constitutional case. Then what should we do with that? If we were to reverse, do we reverse enter the P.I., do we reverse and remand? If we remand, what is the district court going to do? What is left for the district court to do as far as the P.I. goes? I think that, I mean, I think our top level position is still if there's enough in Bruin to affirm. I do think that if you think the district court erred by failing to address the merits factor, the best approach would be to remand and allow the district court to pass on that in the first instance. And do you think, I know you're working on the merits phase for summary judgment, but has it been adequately briefed for the district court to decide and reassess the winter factors on preliminary injunction in the state's view? I think the district court may certainly need to request some supplemental briefing, but I think we're at a much farther evidentiary stage than we were at the preliminary injunction stage. Like we've already, we've disclosed our expert reports in the district court, and so we do have that evidence developed to submit to the court if that's necessary. What would the supplemental briefing be? I think maybe if the district court disagrees with our top-level argument, that there's enough in Bruin to establish that the merits factor favors the state, then I think the district court could ask for supplemental briefing on the history, and we would be in a position to provide that to the court. How quickly? Because, I mean, this case has been, they've had a PI pending for years and years, and so that's one of the challenges here is that there was PI proceedings. The purpose of a PI, if somebody is entitled to get one, is to try to give them a preliminary injunction pending the rest of the case. It's been years and years. If we go back and the district court says, hey, let's have supplemental briefing and gives a long time to do that, and it takes another year or two to decide the PI motion, how is that not very prejudicial to the plaintiffs if they're entitled to a PI? I do want to be candid with the court. Like, I do think we're getting close to a point in the district court where we're going to be in a position to start briefing these issues on the merits. Like, for example, the district court has asked us to file our dispositive motions by August 18th, and so that certainly... This is the motion related to the actual merits? Yes, they've asked for all dispositive motions to be filed by August 18th for a hearing in mid-September. Yeah, that's helpful to know. And that motion would have, I assume, affidavits from experts or something, from historians or something? Is that the idea? Yes, we've disclosed our experts already that we intend to use in connection with our motion for summary judgment. How's that? I don't want to represent... I'm not counsel of record in the district court. I believe that we would be filing. Okay. Interesting. I'm not sure I have any more questions. If there are no further questions from the court, I'm happy to submit. Thank you. Thank you. The state seems to be relying on Bruin and the Bruin historical analysis for public Harry, and I would also look to Bruin and just state that the Supreme Court has already engaged in the historical analysis for public Harry, and a thorough analysis at that,  not limited to the Supreme Court, but the courts are bound to the Supreme Court, and I would like to know... I don't think the Supreme Court has addressed specifically in Bruin or any other cases. First of all, would you agree that you need to have a... the historical analog needs to be specific to the actual law that's being challenged? So, for instance, here, the historical analog that the state would need to show would be bans on open carry. Not just gun regulation, certainly. Would you agree with that? I would say that the first view when engaging in the constitutional analysis is whether the conduct is... whether the regulations are affecting conduct that's protected by the plain text. A ban, inarguably... But I don't think the state contests that. The state doesn't contest that. The state just thinks that Bruin addresses this case because it says regulations... while you have a right to carry, regulations are okay. These are just regulations. Therefore, Bruin addresses this. We understand you disagree with that. What does the state need to actually provide to win in this case? There's nothing they could provide, Your Honor. What's that? But there's nothing they could provide, Your Honor. That's wonderful. Let's imagine some alternative universe where you actually put yourself in the shoes of the state. What would you need to provide? I would have to show that it was legal to ban open carry in 1791. You have to show historical analogs that address open carry. Open carry ban, yes. That's what I asked you two minutes ago. And so you've agreed with me. And so why should the state not be given an opportunity to do that when we remand this case to the district court? And don't say because it's not available. As the court pointed out, they did have the opportunity at the preliminary injunction stage. This case has been going on for several years. And remanding this back to the state court now to have another go-around invited the apple for the state who has never yet presented any historical analysis or evidence and only relied on crime statistics and public safety considerations that my client's constitutional rights and others, the residents of California, will continue to be violated while we wait for that determination. And so if the court has declined to issue the preliminary injunction, at least my clients will be protected and their constitutional rights will be protected while we wait for the state to find some historical evidence. Great. Thank you both for the argument. The case has been submitted and we are adjourned for the day. All rise. This court for this session stands adjourned.
judges: SMITH, LEE, VANDYKE